The jury have found that by the agreement originally made between these parties the defendant was to transfer to the plaintiff a debt against Campbell, arising out of the sale by the defendant of the carding machine property to him, secured upon the property itself.
The original agreement for the conveyance of land by each party to the other and for the transfer of the above mentioned debt by the defendant to the plaintiff, was void in its inception under the statute of frauds. The parties, however, saw fit to proceed in its execution as if it were valid, and in performance of it the plaintiff transferred to the defendant the two land contracts and received from him a considerable payment in money and a conveyance of about 18 acres of land. Thus the whole contract, save in a single particular, was performed by the parties to it, notwithstanding its invalidity; all that remained to be done to complete its performance was that the defendant should make the transfer of the Campbell debt. The plaintiff had fully performed. When each of these acts of performance took place, "the parties virtually said, although the law will not enforce this contract, we will go on and carry it into effect." (Abbott v. Draper, 4Denio, 54.) Each act of conveyance or payment was intended neither as a gift nor as an indefinite sale, but as a part performance of the agreement which the parties had entered into. When, therefore, the last conveyance required by the contract was made, its execution and acceptance were equivalent to a re-adoption by the parties of the remaining unperformed terms of the original agreement. It thereby ceased to be a contract for the sale of lands or an interest in lands and became a mere agreement to pay for lands conveyed. As such it was not within the statute of frauds. A promise to pay for land *Page 372 
conveyed is not within the statute and needs not to be in writing. (Bowen v. Bull, 20 Johns., 340.) It follows from this view of the rights of the parties that the rule of damages laid down at the trial was erroneous. The defendant, if liable, was bound to make compensation to the value of that which he had agreed to pay and had not paid, viz., the debt from Campbell, secured upon the carding machine property. The rule laid down at the trial substantially left it to the jury to ascertain, by a comparison of the value of what had been parted with on each side, how much the plaintiff ought to receive to restore him to the condition he was in before the bargain was made. That which he was entitled to was the unpaid price of the lands sold. In respect to the rule of damages, the judge at the trial erred.
In the charge of the judge it appears that the jury were told that if witnesses, of equal integrity and capacity to judge, differed in their testimony as to the value of the land, they might take an arithmetical average of their estimates of value for the amount of their verdict; that this was a legal method of arriving at the amount of damages, if, after thus ascertaining the amount, they were satisfied that such amount was what they ought to give as damages. In Dana v. Tucker (4 Johns.,
487), it was held that a verdict would not be set aside if the jury saw fit to pursue such a course as that pointed out in the charge; but so far as I am aware, this is the first time a jury has been instructed that such a course was proper to be pursued. Certainly, no reported case contains any intimation of the propriety of recommending such a proceeding to the jury. Their general duty is to decide upon the evidence by some intellectual process, to weigh and consider it and give it such effect as in their judgment it deserves; and if the law does not forbid, it at least does not encourage their resorting to such a substitute for judging of the value, as taking an average of the testimony. Perhaps instructing the jury that they were to find their verdict for this average sum. only in case they thought it, *Page 373 
after being so ascertained, the proper amount to give, has cured the legal difficulty to that degree that it would not be available on error. If so, it hardly diminishes the impropriety of such an instruction, when we consider how certainly such a suggestion, if made, would be followed by the jury, and how little likely it is in point of fact that an amount thus ascertained would not, at once and without further consideration, be taken by the jury as the amount they ought to find.
The judgment should be reversed and a new trial ordered.
Judgment accordingly.